Scofield, J.,
delivered the opinion of the court:
The claimant is a corporation created for military purposes by the State of South Carolina in 1809. In 1857 the corporation became the owner of a certain piece of land in Charleston on which were two buildings, one known as the Piccjuet GuardHouse and the other as the Boylston House.
During the rebellion the premises were occupied by the Confederate government to aid in carrying on the war. So far as appears, consent to such occupancy was neither asked of nor given by the corporation.
In February, 1865, the United States forces took possession of the premises and turned them over to the Bureau of Refugees, Freedmen, and Abandoned Lands.
In October following the premises were turned over to the *21 city of Charleston, and subsequently ’by that city turned over to the claimant.
August 20, 1867, the United States again took possession, without objection on the part of the claimant. From this date to July 1,1868, the defendants paid rent to the city of Charleston for the Picquet Guard-House at the rate of $50 a month, and for the Boylston House at the rate of $92 a month. No rent was paid after that date, for what reason does not appear.
The United States continued the occupancy of the Picquet Guard-House until November 1, 1874, and of the Boylston House until April 1,1879, at which dates they were respectively surrendered to the claimant.
The defendants contend that under sections 1072 and 1073 of the Revised Statutes the claim cannot be considered in this court.
Those sections provide that the petition of any claimant who voluntarily aided, abetted, or encouraged the rebellion shall be dismissed. Since the President’s proclamation of pardon and amnesty, promulgated December 25, 1868 (15 Stat., 711), and the effect given to it by the Supreme Court, the loyalty of citizen claimants under those sections has not been a subject of inquiry in this court. (Klein’s Case, 13 Wall., 128, 7 C. Cls. R., 240; Armstrong’s Case, 13 Wall., 154, 7 C. Cls. R., 280; Carlisle & Henderson v. The United States, 16 Wall., 147, 8 C. Cls. R., 153; United States v Insurance Co., 22 Wall., 99.)
Now, it is argued that a corporation having abstractly no moral qualities, assistance rendered by it to the rebellion involves no turpitude, and being incapable of committing treason, derives no benefit from the general amnesty. The claimant’s officers took part in the rebellion in their individual, not in their corporate, capacity. As officers of the coporation they were guilty of no offense, unless non-action is an offense. They did nothing, to be sure, to protect the property of the corporation from Confederate occupancy, but it is quite certain that all efforts in that direction would have been futile.
These officers have been pardoned. Oblivion is thrown over all their disloyal acts. It is as if such acts had never been committed. (Knote’s Case, 10 C. Cls. R., 407; Armstrong’s Case, 13 Wall., 154.) Since these acts cannot be invoked against the person who committed them, can they be invoked against a corporation of which they were the officers? If the corpora *22 tion is to be charged with the offense of its officers, should it not be credited with their pardons ? The sin óf the officers works a legal effect in the corporation. The sin is pardoned, but the effect, say the defendants, is not. The sinners can come to this court, but the corporation, sinless, because devoid of moral qualities, cannot. We tibiuk the position involves a question in ethics too subtile for practical adjudication.
It is claimed that the facts disclose no contract, either expressed or implied, upon which to base an action in this court.
The defendants certainly had the use and occupation of the premises. The surrender of them in October, 1865, terminated the military occupancy. In resuming the occupancy in August, 1867, they set up no claim of right. By paying rent for the first year they acknowledged the relation of landlord and tenant. It does not appear that the relation thus begun was subsequently changed. The rent was not paid, but the right of the claimant to demand it was not denied. In these facts a contract to pay a reasonable rent is implied.
We agree to the position taken by defendants’ counsel that so'much of the claim as originated prior to July 21,1874, is cut off by the statute of limitations (B. S., 1069). As no time was fixed for the payment of the rent it must be deemed to be payable as it accrued. The petition was not filed until July 21, 1880.
The defendants occupied the Picquet Guard-House until November 1, 1874, three months and ten days subsequent to July 21, 1874. The rent amounts, at $50 a month, to $166.12.
The Boy 1st on House was occupied subsequent to July 21, 1874, for four years eight months and ten days, to April 1,1879. The rent, at the rate of $92 a month, amounts to $5,181.67. The two items of rent amount to $5,347.79.
Judgment will be entered for that sum.
Drake, Ch. J., was not present at the trial and took no part in the decision.